# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 21-1316V

---

DAVID PLAUT,

               Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

               Respondent.

Chief Special Master Corcoran

Filed: June 5, 2024

---

*Bradley S. Freedberg, Bradley S. Freedberg, P.C., Denver, CO, for Petitioner.*

*Naseem Kourosh, U.S. Department of Justice, Washington, DC, for Respondent.*

### **DECISION**[1]

On May 5, 2021, David Plaut filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), which he amended on December 24, 2021. Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from Hepatitis A and

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

B vaccines received in his left shoulder on January 22, 2020.[3] Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner has not established by a preponderance of the evidence that he experienced the onset of shoulder pain within 48 hours of vaccine administration, or that he suffered from reduced range of motion, as required for a Table SIRVA claim. He also has not provided evidence that would support an off Table claim for a shoulder injury or the injury of Bell's palsy. Thus, the claim is dismissed.

## I.   Relevant Procedural History

On April 10, 2023, Respondent filed his Rule 4(c) Report asserting that this case is not appropriate for compensation (ECF No. 39). Two days later, I directed Petitioner to show cause by June 12, 2023, why the petition should not be dismissed due to the deficiencies identified in the Rule 4 Report (ECF No. 40). Eight days later (April 20, 2023), Petitioner filed a status report stating that he would "work on providing a sworn statement from himself and any other witnesses who can verify that he was in pain in the hours and days following the vaccination" as well as additional medical records (ECF No. 41). Petitioner stated that if these documents were not received by June 12th, he would submit a motion for an extension of time. Petitioner did not submit the documents, a response to the show cause order, or an extension motion by the deadline.

On June 16, 2023, I *sua sponte* extended the deadline for Petitioner to respond to the show cause order to June 23, 2023. Scheduling Order (NON PDF), issued June 16, 2023. On the same day, Petitioner filed Ex. 10 and a status report (ECF Nos. 42-43). The issue of whether the petition should be dismissed is now ripe for resolution.

## II.   Relevant Factual History

### A.  Medical Records

On January 22, 2020, Petitioner received Hepatitis A and B vaccines in his left deltoid. Ex. 6 at 2-3. The vaccines were administered during an appointment with Dr. Benjamin Smith, Petitioner's primary care physician ("PCP"). Ex. 3 at 9-11. The following

---

[3] The amended petition lists two dates of vaccination, January 20 and 22, 2020. Amended Petition at 1. However, the vaccination record indicates that the vaccines were both administered on January 22, 2020. Ex. 6 at 2-3.

day, he returned to his PCP's office, noting that he had received two vaccines the day before and now felt weaker, had sore neck muscles, felt tired and short of breath, was sweating more than normal, had loose bowel movements, and felt "like a different human being today." Ex. 9 at 416. A musculoskeletal examination revealed no swelling. *Id.* at 418. There was no rash, edema, or redness at the injection site. *Id.* Petitioner was advised to take Benadryl and go to the emergency room if he developed swelling in his mouth or tongue or had trouble breathing. *Id.* at 416. The record does not indicate that Petitioner reported left shoulder pain or any other problems with his left arm or shoulder. *Id.*

Petitioner returned to his PCP's office on February 10, 2020 for sinus problems, and reported that he "[f]elt like dying after getting vaccine." Ex. 9 at 415. He was given antibiotics for sinusitis. *Id.* This record does not mention Petitioner's left arm or shoulder, or document any musculoskeletal complaints or examination. *Id.*

Petitioner saw Dr. Smith on February 28, 2020 to follow up on Hepatitis C treatment. Ex. 9 at 411. He had started medication to treat Hepatitis C on February 20, 2020 and had some fatigue and his sleep had been "off," but was otherwise was tolerating it well. *Id.* No arm or shoulder complaints were recorded. *Id.*

The next day (February 29, 2020), Petitioner went to the emergency department ("ED") reporting that he had awoken that morning with facial drooping. Ex. 9 at 404. He was found to exhibit "obvious Bell's palsy without any other neurologic deficit," and was given prescriptions for acyclovir and a Medrol Dosepak.[4] *Id.* A musculoskeletal examination found normal range of motion. *Id.* at 407. The record does not mention Petitioner's arm or shoulder specifically.

Petitioner was seen in his PCP's office on March 2, 2020 to follow up on his Bell's palsy. Ex. 9 at 401. He was also "[s]till disturbed about 'immunization reaction' over a month ago and impact on Hep C treatment." *Id.* He had seen his PCP the week before and was "mad at himself because [he] didn't talk to him about it again." *Id.* On examination, he had left side facial drooping consistent with Bell's palsy. *Id.* at 403. He was given eyedrops and ointment, and instructed to use an eye patch at night. *Id.* at 401. The record does not contain further details about an immunization reaction or any complaints or findings relating to his arm or shoulder. *Id.* at 401-403.

Petitioner went to the ED twice on March 4, 2020 for worsening left-sided blurry vision and eye pain. Ex. 9 at 391, 395. During his first ED visit that day, an examination found normal range of motion. *Id.* at 399. It appears no musculoskeletal examination was done during the second ED visit on March 4th. *Id.* at 394. He was assessed with Bell's palsy, acute bacterial conjunctivitis of the left eye, and dry eye on the left side. *Id.* at 391,

---

[4] Petitioner's PCP later noted that his Bell's palsy began on the eighth day after he began a new medication for Hepatitis C. Ex. 9 at 390.

395. He was given eyedrops and instructed to continue using artificial tears and follow up with a neurologist and ophthalmologist. *Id.* Neither record mentions Petitioner's left arm or shoulder.

The next day (March 5, 2020), Petitioner saw Dr. Smith. Ex. 9 at 389. The visit was for concerns about Petitioner's recent vaccination, initiation of Hepatitis C medication, and Bell's palsy. *Id.* The record of the visit does not contain any complaints or examination findings related to Petitioner's left arm or shoulder. *Id.*

The record includes a letter from Dr. Smith dated March 5, 2020, that is addressed to the attention of the Vaccine Adverse Event Reporting System ("VAERS"). Ex. 3 at 21, 55; Ex. 9 at 390. The letter states that after receiving the Hepatitis A and B vaccines on January 22nd, Petitioner "experienced several symptoms that he attributes to the vaccine[s] that we are sharing with you for further monitoring and for consideration for the National Vaccine Injury Compensation Program." Ex. 3 at 55. The listed symptoms reported by Petitioner include weakness, dizziness, tiredness, blurred vision, double vision, sensitivity to light, sore throat, muscle soreness, a sensation that his neck would fall off, and multiple falls upon rising to standing. *Id.* The letter adds that his "symptoms were persistent per his report through initiation of mavyret for his chronic hepatitis c, though the intensity of his symptoms was variable at times though he reports that it has persisted at least through today, March 5th." *Id.* Dr. Smith added that "[n]otably, his course was later complicated by development of Bell's Palsy on day 8 of mavyret therapy" for hepatitis C. *Id.*

The record contains a letter from Dr. Smith dated the following day (March 6, 2020) that is identical to the March 5th letter but adds as additional reported vaccination-related symptoms "[m]ental [f]ogginess, disorientation, memory loss, ringing in the ears, loss of hearing in the right ear." Ex. 3 at 56. Neither letter says that Petitioner reported any left arm or shoulder pain resulting from the relevant vaccinations.

On March 23, 2020, Petitioner was seen in his PCP's office for nasal congestion. Ex. 9 at 374. He stated that he had "a poor response to Hepatitis B Vaccine that is known to his PCP Dr. Smith and would like it stated in his record that he should not receive Hep B or Hep A vaccines in the future." *Id.* The record states he was given a letter stating he had reported an adverse vaccine reaction, and VAERS documentation was completed. *Id.* The same day, Dr. Smith signed a letter stating that Petitioner reported a "significant, broad set of adverse effects of hepatitis A and B vaccinations in January 2020." Ex. 3 at 60. For this reason, Petitioner preferred to avoid further risk of adverse effects by not pursuing routine vaccination, and Dr. Smith felt "this preference is a good fit given his complex medical history." *Id.* The letter does not mention Petitioner's arm or shoulder.

Petitioner saw orthopedist Dr. Steven Seiler for right small finger pain on March 30, 2020. Ex. 2 at 7. He had been moving a couch and strained his finger and felt a pop

on April 9, 2020. *Id*. He was given a prescription for fabrication of a custom mallet splint and advised to follow up in six weeks. *Id*. The record does not contain any mention of problems with his left arm or shoulder. *Id*. Petitioner visited an orthopedic clinic for dressing supplies on May 12, 2020. *Id*. at 6.

Petitioner went to the ED on April 9, 2020, for right finger pain, bruising, and swelling that occurred while moving furniture. Ex. 9 at 361. A musculoskeletal examination of his hands was done and revealed bruising on his right small finger. *Id*. at 363. No other musculoskeletal problems were documented. *Id*. The record contains an April 21, 2020 letter from Dr. Smith stating that Petitioner "had previous reactions possibly attributed to vaccination, and thus any future vaccination (such as any developed for coronavirus) will [need] to be considered carefully." Ex. 3 at 61. The letter is silent on any arm or shoulder problems.

Petitioner saw orthopedists Dr. Stephen Yemm and Dr. Steven Seiler on June 1, 5, and 11 to follow up on his finger condition. Ex. 2 at 1-5. The records are silent on any concerns relating to Petitioner's left arm or shoulder. Petitioner attended an occupational therapy evaluation for his right finger on April 30, 2020. Ex. 2 at 24-26. Significantly, he reported that he had no arm, shoulder, or hand pain, and had no difficulty sleeping due to arm, shoulder, or hand pain. *Id*. at 37. He also reported no difficulty with activities such as carrying a shopping bag or briefcase, washing his back, heavy chores such as washing walls or floors, recreational activities taking force or impact through the arm, shoulder, or hand. *Id*.

Petitioner attended six sessions of physical therapy for Bell's palsy between May 12 and June 24, 2020. Ex. 9 at 314-352. The record does not document treatment for Bell's palsy following the June 24th physical therapy session, which was approximately five months after vaccination, and less than four months after the onset of his Bell's palsy. *Id*. at 314.

On October 14, 2020, Petitioner visited the ED for right hip pain after falling. Ex. 9 at 243. A musculoskeletal examination revealed "[n]o extremity deformity," and he was "[m]oving all 4 extremities" – suggesting that his upper extremities, or arms, were able to move normally. *Id*. at 245. No abnormalities to his upper extremities were noted. *Id*.

On October 28, 2020, Petitioner underwent a physical therapy evaluation for his right hip pain. Ex. 9 at 224. He reported that about a month earlier he had begun an exercise program that included push-ups – an exercise that involves bearing weight on both shoulders. *Id*. at 225. The record does not document any concerns with his arm or shoulder.

On November 10, 2020, Petitioner saw his PCP for a follow up concerning hemorrhoids. Ex. 9 at 207. The problem list for this appointment also includes "Vaccine

counseling," and indicates that Petitioner was "concerned for adverse event with many non-specific symptoms (see letter March 5 2020)." *Id.* at 208. The record further states, "[d]ue to patient's concern for adverse reaction to hep b and a vaccinations, subsequent doses deferred." *Id.* On the same day, Dr. Smith also addressed a letter to Petitioner stating that at his appointment on that date they "discussed the persistent pain, weakness, and muscle deterioration that you've noted in your left arm since your hepatitis immunization there earlier in 2020." Ex. 3 at 64. The letter also notes that "[t]his document confirms our discussion, and this has been documented in your medical record." *Id.* However, the November 10th medical record *itself* does not document arm or shoulder pain. Ex. 9 at 207-214.

On January 11, 2021, Petitioner saw Dr. Kale Flory in his PCP's office for "Neck Pain (shoulders, neck, back)." Ex. 9 at 103. Other than this sole reference to "shoulders," the record is silent on any arm or shoulder problem. *Id.* It states that he reported "neck/back stiffness," and the review of symptoms is positive for "upper back stiffness." *Id.* at 103-04. He denied upper extremity weakness, numbness, or tingling. *Id.* at 103. On musculoskeletal examination, Petitioner had "[n]ormal range of motion," and examinations of his cervical, thoracic, and lumbar back areas exhibited normal range of motion, no tenderness, no bony tenderness, and no spasm. *Id.* at 104. His upper extremity strength and sensation were grossly intact and symmetrical. *Id.* at 103. He was assessed with back stiffness. *Id.*

To summarize, Petitioner sought medical care regularly for a wide variety of conditions in the *nearly ten months* between the January 22, 2020 date of vaccination[s] and the first record suggesting a possible arm problem – a letter signed by Dr. Smith on November 10, 2020 (Ex. 3 at 64). During this time, he was seen in the ED eight times and attended 21 primary care appointments, in addition to multiple rounds of physical/occupational therapy and appointments with specialists in orthopedics, neurology, surgery, and ophthalmology, as well as several consultations at a wound care clinic.[5] *See generally* Exs. 1, 2, 3, 8, 9. None of these records document any reported problem or findings concerning Petitioner's left arm or shoulder. *Id.*

## B. Affidavit

Petitioner has filed an affidavit in support of his claim.[6] Ex. 4. Petitioner states that

---

[5] This decision does not discuss all of these visits, but only those most relevant to the onset of Petitioner's left shoulder pain.

[6] Petitioner filed the same affidavit twice, on May 26, 2021 without an exhibit number (ECF No. 10-1) and on December 24, 2021 as Exhibit 4 (ECF No. 17-1). In this decision I refer to the affidavit filed as Exhibit 4.

after receiving the vaccines in January 2020,[7] he "could immediately tell that something was wrong." Ex. 4 He adds:

> The shot burned at the site of the injection. My left shoulder, and limbs in general became stiff, to the point that I had difficulty walking and had to cancel my musical performances and stop driving cabs as a side job because I could no longer do so safely.

Ex. 4.

Petitioner adds that he began experiencing blurred vision after vaccination as well, although he does not state when this occurred. Ex. 4. And he suffered from Bell's Palsy. *Id.* He states that his medical records "indicate that I experienced persistent pain, weakness, and muscle deteriorating in my left arm since the hepatitis immunization," citing Ex. 3 at 64. Ex. 4.

### C.  Other Evidence

In response to my April 12, 2023 show cause order, Petitioner filed Exhibit 10, containing four separate documents: (1) a May 16, 2023 letter from Dr. Smith, (2) another copy of the November 10, 2020 letter from Dr. Smith, (3) a document dated May 9, 2023 and signed by Petitioner, and (4) a document dated April 29, 2023 from Ernie Tellez concerning Petitioner. Ex. 10 at 1-4. The letters from Dr. Smith are not certified medical records, but appear to have been compiled by Petitioner or his counsel. The documents from Petitioner and Mr. Tellez are not notarized or signed under penalty of perjury, which somewhat reduces their evidentiary reliability. Ex. 10 at 3-4.

The May 16, 2023 letter from Dr. Smith states that on that date, he and Petitioner "reviewed the persistent pain, weakness, and muscle deterioration that David has noted in his left arm since hepatitis immunization there earlier in 2020 . . . . He additionally adds that this has contributed to difficulties in driving, dressing, and other IADLs [independent activities of daily living]." Ex. 10 at 1.

The May 9, 2023 document signed by Petitioner states that "[s]ince the injury at the injection site from January 22, 2020 to date May 9, 2023, pain, muscle deterioration, limited range of motion, and use of left arm, due to the impairment, have continued to persist." Ex. 10 at 3. Petitioner further states, "[a]fter receiving the hepatitis A and B vaccine on January 22, 2020, adverse effects continued to worsen. Pain, muscle deterioration, and muscle weakness persisted." Ex. 10 at 3. The document further states

---

[7] Petitioner's affidavit incorrectly states that the vaccines were received on January 20, 2020. Ex. 4. The vaccination record indicates the vaccines were administered on January *22*, 2020. Ex. 6 at 2-3.

that on March 23, 2020, "It was noted that due to the negative impact of the hepatitis A and B vaccine on January 22, 2020 . . . [Dr. Smith] deemed it prudent not to pursue further Hepatitis A and B vaccines to avoid risks of further adverse effects." *Id.*

The April 29, 2023 document from Ernie Tellez states that Mr. Tellez attends church with Petitioner. Ex. 10 at 4. Petitioner told Mr. Tellez that he had a vaccination in his left arm, and "[s]ince about February 2020, Mr. Plaut has continually complained about the pain in his left arm where he had the injection." *Id.* In addition, Petitioner has made faces due to pain, and "limited use of his left arm during church functions." *Id.*

## III. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a).

Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time-frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

## IV.     Parties' Arguments

Respondent asserts that this case is not appropriate for compensation. Respondent's Rule 4(c) Report, filed April 10, 2023 (ECF No. 39) ("Respondent's Report"). Respondent argued that Petitioner had not demonstrated that the onset of his shoulder pain occurred within 48 hours, that he experienced reduced range of motion, or that his symptoms were limited to his vaccinated shoulder. Respondent's Report at *16-17. Respondent added that Petitioner had not satisfied the *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) elements for a causation-in-fact claim. *Id.* at *17. Petitioner also has not formally asserted the claim of vaccine-induced Bell's palsy, but Respondent maintains that any such claim would fail – in part because the record does not establish that Petitioner suffered Bell's palsy or related sequelae for more than six months after vaccination. *Id.* at *18.

On June 16, 2023, Petitioner filed a status report in response to the show cause order. Petitioner's Status Report/Show Cause Response, filed June 16, 2023 (ECF No. 43) ("Show Cause Response"). Petitioner states that the signed statements in Exhibit 10 "demonstrate that the Petitioner has suffered the onset of shoulder pain within 48 hours of the administration of the vaccine." Show Cause Response at *1. In support of this argument, Petitioner notes that by March 23, 2020, his PCP "deemed it prudent not to pursue further Hepatitis A and B vaccines to avoid risks of further adverse effects." *Id.* In addition, Petitioner's friend, Mr. Tellez, stated that "petitioner complained about left arm pain at the site of the injection since February 2020, about one month after the administration of the vaccine." *Id.* And Petitioner's PCP provided a statement "that the petitioner has consistently noted pain in his left arm since his hepatitis immunizations in 2020." *Id.*

## V.     Analysis

Petitioner has not preponderantly established that the onset of his left shoulder pain occurred within 48 hours of vaccine administration or that he suffered from reduced range of motion, both of which prevent him from establishing a Table SIRVA claim. In addition, I do not find on this record that an off-Table version of the same claim would be viable due to the same deficiencies. Petitioner has not demonstrated "more likely than not" that a shoulder injury that did not require care (or even mention to a medical professional) until almost ten months after vaccination has any causal relationship to the vaccinations.

There are no medical records for a lengthy period of time post-vaccination showing that Petitioner was treated for left arm or shoulder pain from the January 2020

vaccinations. The first document even *suggesting* that Petitioner may have suffered shoulder pain resulting from the January 2020 vaccinations is dated nearly ten months later, and is a letter from Dr. Smith to Petitioner stating that they discussed the pain, weakness, and muscle deterioration that Petitioner had noted in his left arm since the Hepatitis vaccinations. Ex. 3 at 64. However, the actual medical record of the same date (November 10, 2020) is silent on any left arm or shoulder problems. Ex. 9 at 207-214.

Moreover, Petitioner was seen by medical professionals *dozens* of times in the ten months between vaccination and the November 10th letter, including 21 appointments with his PCP, several orthopedic visits, multiple physical/occupational therapy appointments, and eight ED visits. *None* of these records mention left arm or shoulder pain. At a physical therapy evaluation for a right finger problem in April 2020 – three months after vaccination – he reported *no arm or shoulder pain.* Ex. 2 at 37. He also reported no difficulties with carrying a shopping bag, washing his back, cleaning walls or floors, recreational activities taking force or impact through the arm, shoulder, or hand. *Id.*

Petitioner's PCP did agree in March 2020 to Petitioner's preference to avoid further Hepatitis A and B vaccines due to a "broad set of adverse effects" reported by Petitioner. Ex. 3 at 60. However, the record does *not* support a finding that this was due specifically to any shoulder problem, or that any such problem occurred within 48 hours of vaccination.

Petitioner has established that he received covered vaccines. But he has not established that either or both of the vaccines caused him to suffer pain within 48 hours (as required by the Table), or within any timeframe that could plausibly support a causal relationship to vaccination to support an off Table claim. The absence of evidence that Petitioner reported or sought treatment for left shoulder pain until nearly ten months after vaccination, despite *dozens* of medical encounters, including 21 appointments with his PCP and several orthopedist appointments – health care providers who were well-equipped to evaluate and treat any shoulder problem – is striking, and weighs heavily *against* a finding that he experienced left shoulder pain within 48 hours or any time period that could reasonably support a finding that it was related to vaccination.

This is not a case where a petitioner generally did not seek medical care, but later consistently reported shoulder pain related to vaccination when they did seek care. Instead, this petitioner was seen dozens of times by his PCP, in the ED, and by a variety of specialists, for a variety of medical concerns – and at *none* of these encounters did he report shoulder pain, and three months after vaccination he denied arm or shoulder pain.

The only records suggesting that Petitioner suffered shoulder pain related to vaccination are letters (but not medical records) from his PCP, Petitioner's affidavit, and

unsworn statements from Petitioner and someone from his church. While the PCP letters could suggest that Petitioner reported pain "since" the January 2020 vaccinations, they do not specifically say that his pain began within 48 hours of vaccination. I also find significant the fact that shoulder pain is not documented in *any* contemporaneous medical records, and three months after vaccination he reported *no* arm or shoulder pain (Ex. 2 at 37). These records weigh against a finding that Petitioner experienced shoulder pain within 48 hours of vaccination, or within any time that could support an off Table claim.

Petitioner's affidavit states that he felt burning, stiffness, and that "something was wrong" after vaccination, impacting his activities – but does not state that he felt pain within 48 hours. Ex. 4. His unsworn statement maintains that pain, muscle deterioration, and limited range of motion have "continued to persist" since the January 2020 vaccinations – but does not provide details on when the pain began, why he reported the absence of shoulder pain in April 2020, or why he did not seek treatment for his shoulder. Ex. 10 at 3. And Mr. Tellez put the onset of Petitioner's pain generally in "about February 2020" – which is beyond 48 hours. *Id.* at 4.

In addition, there are no medical records showing that Petitioner suffered limited range of motion - another requirement for a Table SIRVA. The only record alluding to this requirement is Petitioner's unsupported assertion in his unsworn statement that he suffered limited range of motion. Ex. 10 at 3. In the context of voluminous medical records devoid of documented range of motion problems, I find that a preponderance of the evidence supports a finding that Petitioner did not suffer from limited range of motion.

Petitioner has not asserted a Bell's palsy claim. Even if he had done so, however, and could demonstrate a causal link to the January 2020 vaccines – which is unlikely, given the lengthy time between vaccination and the onset of his Bell's palsy – the record does not preponderantly establish that he suffered residual effects of this condition for more than six months.

## Conclusion

**Petitioner has failed to establish that his injury meets the requirements for a Table SIRVA, or a shoulder injury or Bell's palsy caused in fact by the Hepatitis A and/or B vaccines. Accordingly, this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.[8]**

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

renouncing the right to seek review.