# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1316V

|  |  |
|---|---|
| DAVID PLAUT,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: April 8, 2026 |

*Bradley S. Freedberg, Bradley S. Freedberg, P.C., Denver, CO, for Petitioner.*

*Naseem Kourosh, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION ON ATTORNEY'S FEES AND COSTS[1]

On May 5, 2021, David Plaut filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), which he amended on December 24, 2021. Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from Hepatitis A and B vaccines received in his left shoulder on January 22, 2020.[3] Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] The amended petition lists two dates of vaccination, January 20 and 22, 2020. Amended Petition at 1. However, the vaccination record indicates that the vaccines were both administered on January 22, 2020. Ex. 6 at 2-3.

On June 5, 2024, I dismissed the claim for insufficient evidence (ECF No. 44). Thereafter, Petitioner moved for an award of attorney's fees and costs. Respondent opposed, and Petitioner replied. For the reasons set forth below, I find that Petitioner has failed to establish there was a reasonable basis for the claim. Thus, the motion for fees and costs is denied.

## I.    Procedural History

On April 10, 2023, Respondent filed his Rule 4(c) Report opposing compensation (ECF No. 39). Following my review of the evidence, I ordered Petitioner to show cause why his claim should not be dismissed for insufficient proof (ECF No. 40). In response, Petitioner filed Exhibit 10, containing two letters from his primary care physician ("PCP"), unsworn statements from Petitioner and an acquaintance, and two status reports (ECF Nos. 41-43).

On June 5, 2024, I dismissed the case. Dismissal Decision, issued June 5, 2024, (ECF No. 44). I determined that Petitioner had not established by preponderant evidence that he experienced the onset of shoulder pain within 48 hours of vaccination, or that he suffered from reduced range of motion at *any* time. *Id*. And I determined that he had not offered evidence that would support an off-Table claim either. *Id*. That determination was not appealed.

On June 21, 2024, Petitioner filed a motion seeking $43,094.49 in attorney's fees and costs (ECF No. 45). Petitioner did not address the statutory requirements of good faith and reasonable basis – prerequisites for any fees and costs award in unsuccessful cases. *See* Section 15(e)(1). On July 2, 2024, Respondent opposed a fees award on the ground that Petitioner had not established that his claim had a reasonable basis (ECF No. 46).

Three days later, Petitioner replied (ECF No. 47). Petitioner now provided several explanations, asserting that counsel prioritized the SIRVA Table injury, and planned to retain an expert for an off-Table claim if necessary. *Id*. Petitioner adds that he sought to uncover evidence of onset within 48 hours, and that there was "more than a scintilla of evidence that a Table claim could exist," citing Petitioner's complaint to his PCP less than 24 hours after vaccination of allergic reactions and feeling "like a different human being." *Id*. at *2. As such, counsel saw a good faith basis for the claim – conflating good faith (which Respondent does not question) and reasonable basis – a separate issue. Petitioner adds that grounds for an off-Table claim also existed: an expert witness could have provided a theory of causation (although counsel acknowledges that he tried, without success, to retain an expert). *Id*. at *3. Counsel concludes that he "may have confused Respondent and the Court" by presenting only a Table SIRVA claim and not an off Table alternative claim. *Id*. at *4. The matter is ripe for adjudication.

2

## II.     Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 569 U.S. 369, 380 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Human Servs*., 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[4] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Human Servs*., 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at \*6 (quoting *Di Roma v. Sec'y of Health & Human Servs., No.* 90-3277V, 1993 WL 496981, at \*1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

---

[4] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Human Servs*., 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Human Servs*., 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs*., No. 99-0544V, 2007 WL 4410030, at \*5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

3

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Human Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Human Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II"*), *aff'd without op.,* 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. Reasonable basis for a claim at the time of filing may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

Vaccine Act Section 11(c)(1)(D)(i) requires the establishment of an injury and residual effects lasting for over six months after the date of vaccination. This is a threshold requirement for entitlement. *Black v. Sec'y of Health & Human Servs.,* 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

### III.    Analysis

The record reflects that Petitioner received Hepatitis A and B vaccines in his left deltoid on January 22, 2020, at his PCP's office. Ex. 6 at 2-3. The following day, he returned to his PCP's office with a variety of complaints – none of which involved shoulder pain or any concern with his left arm or shoulder. Ex. 9 at 416. Over the following nine and a half months, Petitioner was seen in hospital emergency departments eight times, his PCP's office 21 times, multiple specialists in orthopedics, neurology, surgery, and ophthalmology, attended multiple rounds of physical/occupational therapy, and was seen in a wound clinic. *See* Dismissal Decision at *6 (citing Exs. 1, 2, 3, 8, 9). None of these records document *any* reported problem or findings concerning Petitioner's left arm or shoulder.

The first record mentioning a possible arm problem is a letter signed by Petitioner's PCP on November 10, 2020 – nearly ten months after vaccination – stating that at an appointment that day, they had "discussed the persistent pain, weakness, and muscle deterioration that [Petitioner had] noted in [his] left arm since [his] hepatitis immunization there earlier in 2020." Ex. 3 at 64. Although Petitioner saw his PCP that day (November 10th), the medical record itself does not document any problem, or treatment, relating to Petitioner's arm or shoulder . Ex. 9 at 207-14. The record mentions deferral of vaccines "for now" due to "patient's concern for adverse reaction to hep b and a vaccination," noting that Petitioner was "concerned for adverse event with many non-specific symptoms" and referring to a March 5, 2020 letter. Ex. 9 at 207-08. The referenced March 5th letter states that Petitioner experienced various symptoms he attributed to vaccination – but those symptoms do not include arm or shoulder pain. Ex.3 at 55.

Two months later – now almost a *year* after vaccination – Petitioner saw his PCP for "Neck Pain (shoulders, neck, back)" – but other than this single reference to "shoulders," the record focuses on other concerns and is silent on any problem with Petitioner's arm or shoulder, and does not provide any details about when any shoulder pain began.[5] Ex. 9 at 103. Thus, the record establishes no occasion when Petitioner received medical attention for shoulder pain. And Petitioner has not identified *any* record, at *any* time, that suggests his shoulder range of motion was reduced. Due to these evidentiary deficiencies, the case was dismissed.

The same concerns that resulted in dismissal of this case also counsel against an award of fees. Although Petitioner saw his PCP the day after vaccination, the record contains *no* indication that Petitioner was experiencing shoulder pain at that time. It strains credulity to suggest that Petitioner returned to his PCP one day after vaccination to complain of several concerns, but *not* shoulder pain, if shoulder pain indeed existed at that time. Rather than supporting a finding of reasonable basis, this record should have prompted counsel to question whether Petitioner's shoulder pain in fact existed at that time.

The remaining objective record evidence underscores doubts as to the viability of this claim that should have been taken into account before the matter's filing. The fact that Petitioner was seen by health care providers *dozens* of times in the nine and a half months after vaccination, but did not even *once* mention shoulder pain, is particularly noteworthy.

I acknowledge that Petitioner's affidavit represents that he experienced burning and stiffness after vaccination. Ex. 4. However, it does not state *when* these symptoms

---

[5] The January 2021 record states that Petitioner reported neck and back stiffness that had been "[o]ngoing for a couple of days." Ex. 9 at 103. Thus, to the extent this record contains any information about the onset of Petitioner's reported pain, it suggests a recent onset.

began. And Petitioner states that not just his left shoulder, but "limbs in general" became stiff, leading to difficulty walking and driving – symptoms that are not generally consistent with a SIRVA. *Id*. Petitioner's unsworn statement – signed in 2023, over three years after vaccination – conclusorily states that he experienced pain, muscle deterioration, and limited range of motion "from January 22, 2020" to May 2023, without providing further details or explaining how he was able to recall this years later. Ex. 10 at 3. And the unsworn 2023 testimonial statement from an acquaintance is also not compelling, stating that Petitioner complained about left arm pain where he received the vaccine "[s]ince about February 2020" – without explaining how he was able to recall this over three years later. *Id*. at 4.

The most contemporaneous medical records exhibit that Petitioner received medical care for a wide variety of conditions from several different providers and facilities in the months following vaccination – but none for arm or shoulder pain. He saw his PCP an average of twice a month in the ten months after vaccination, but did not mention shoulder pain during that time.

Counsel argues that the case was brought in good faith – but good faith is not contested, and is a separate element from reasonable basis that claimants must establish to receive a fees award in an unsuccessful case. And again – while Petitioner did see his PCP one day after vaccination with complaints, it is noteworthy that shoulder pain was *not* among his reported concerns, either at this appointment or at any of the other *dozens* of healthcare encounters Petitioner attended over the following months. There clearly was ample objective evidence in this record unsupportive of a critical SIRVA element.

This case exhibited foundational deficiencies from the outset and before filing, and these problems could have been ascertained by counsel. This is not a case in which the development of facts from ambiguous records later revealed that a claim that initially appeared viable in fact was not. Accordingly, it is fair that counsel bears the risk of filing an objectively-unsupported claim. Only vaccine injury cases that possess at least a scintilla of objective support are properly allowed attorney's fees.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs to an unsuccessful litigant who manages to establish good faith and a reasonable basis for the Petition. Section 15(e)(1). But reasonable basis has not been established here. Therefore, **Petitioner's motion for attorney's fees and costs is <u>DENIED</u>.**

6

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.